[L.A. No. 29889. In Bank. Nov. 24, 1971.]

MARY ANN EARLS, Plaintiff and Appellant, v.
THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY, Defer
ant and Respondent;
COUNTY OF SAN LUIS OBISPO, Real Party in Interest and Respondent.

**COUNSEL**

Burton D. Fretz, Martin H. Kresse and John E. Huerta for Plaintiff and Appellant.

Robert N. Tait, District Attorney, and Richard A. Carsel, Deputy District Attorney, for Defendant and Respondent and for Real Party in Interest and Respondent.

**OPINION**

**MOSK, J.**—Petitioner seeks a writ of mandate to compel respondent court to grant her motion to file a petition for dissolution of marriage without the payment of a filing fee. She alleges that on three occasions before filing the instant proceeding, she submitted to respondent court a motion to file her petition for dissolution of marriage in forma pauperis, supported by an affidavit setting forth facts indicating that she was indigent. Twice the motion

was denied without any reason ascribed and a third time a secretary to one of the judges of the respondent court stated, without elaborating further, that the judge had determined petitioner had the "resources" to pay the fee.

Petitioner thereupon applied to the Court of Appeal for a writ of mandate to compel respondent court to accept her petition for filing. Within a few days after she applied to the appellate court for the writ, respondent court on its own motion set a date for hearing to determine whether petitioner was in fact able to pay the filing fee. Volunteer counsel appeared for petitioner at the proceeding and submitted an affidavit in support of her claim of indigency, but petitioner did not personally appear. The district attorney, representing the county, called as his only witness a welfare department investigator whose testimony will be discussed *infra*. At the conclusion of the hearing, the judge ruled that petitioner must pay the filing fee. The Court of Appeal subsequently denied the petition for a writ.

We granted a hearing not only because respondent court erred in concluding that petitioner was not indigent but also to prescribe some guidance to trial courts in the consideration of applications of the type involved here.

■ We begin with the indisputable proposition, not challenged by respondents, that if petitioner is in fact indigent she is entitled to file her action for dissolution of marriage without the payment of a filing fee. *Boddie* v. *Connecticut* (1971) 401 U.S. 371 [28 L.Ed.2d 113, 91 S.Ct. 780], stands for the concept that a court may not refuse an indigent the right to file an action for divorce on the ground that the filing fee has not been paid, if the action is commenced in good faith.[1] The Supreme Court held that such refusal amounted to a denial of due process of law since it deprived an appellant, solely by reason of poverty, of an opportunity to be heard upon the claimed right to a dissolution of marriage.

■ For many years prior to the decision in *Boddie* the courts of this state were deemed to have the inherent power to permit an indigent civil litigant to sue in forma pauperis (*Martin* v. *Superior Court* (1917) 176 Cal. 289, 296 [168 P. 135]) and to waive fees and costs (e.g., *Majors* v. *Superior Court of Alameda Co.* (1919) 181 Cal. 270, 279-289 [184 P. 18, 6 A.L.R. 1274]). We recently held in *Ferguson* v. *Keays* (1971) 4 Cal.3d 649 [94 Cal.Rptr. 398, 484 P.2d 70], that appellate courts also possess the inherent power to waive filing fees for indigents. We emphasized in *Ferguson*, as did the United States Supreme Court in *Boddie, supra*, 401 U.S. 371 at pp. 381-382 [28 L.Ed.2d at pp. 121-122], that the broad policy of discouraging frivolous litigation and providing financial support for the

---

[1]There is no claim that petitioner is not acting in good faith in seeking a dissolution of her marriage.

judiciary does not justify depriving indigents of access to the courts (4 Cal. 3d at p. 657).

■ Thus, in the present case petitioner must prevail if she was in fact indigent. Respondents concede that petitioner's affidavit in support of her motion to proceed in forma pauperis established a prima facie showing of indigency.[2] Yet the motion was summarily denied by the court on three occasions without a clue as to the existence of valid reasons justifying the denial.[3]

■ While the propriety of prior denials of petitioner's applications may be moot by reason of the substitution of the instant proceeding, we indicate for the future guidance of trial courts that whenever a motion to proceed in forma pauperis is supported by an affidavit sufficient on its face to show indigency the court must grant the motion unless it has good reason to doubt the truthfulness of the factual allegations in the affidavit, and in that event it may decide the matter on conflicting affidavits, or in unusual circumstances order a hearing for the purpose of inquiring into the matter.[4]

[2]It appears that the substance of the declarations upon which two of the rejected motions were based is the same as the declaration petitioner relies upon in this proceeding.

[3]Petitioner contends that prior to the time we granted a hearing in this case respondent court had made it a practice to refuse to accept for filing without a fee all petitions for divorce or dissolution of marriage even though the applicant was clearly indigent. It is claimed that within the cumulative experience of the three attorneys employed by California Rural Legal Assistance in San Luis Obispo County, respondent court had not authorized a single in forma pauperis application of this type within the last five years; since this hearing was granted, respondent court has permitted filing in three instances. Respondents reply that the court does not automatically refuse to grant applications to proceed in forma pauperis but it is not directly denied that such applications had been refused whenever a divorce or dissolution of marriage was sought. Whatever may have been the practice of the court in the past, it is clear that a litigant who is in fact indigent may not be deprived of his right to file an action for dissolution of marriage by reason of his inability to pay the filing fee.

[4]If a court orders a hearing on each application in forma pauperis, it could impose a severe hardship upon litigants, upon volunteer attorneys if any can be obtained, and upon the court itself. It appears that under ordinary circumstances the application to proceed in forma pauperis is determined on the basis of affidavits. (See *Boddie* v. *Connecticut, supra,* 401 U.S. 371, 372-373 [28 L.Ed.2d 113, 115-116]; *Adkins* v. *DuPont Co.* (1948) 335 U.S. 331, 339 [93 L.Ed. 43, 48, 69 S.Ct. 85]; 2 Witkin, Cal. Procedure (2d ed. 1970) p. 1075.) This does not necessarily mean, however, that a trial court may not hold a hearing to determine the truth of the assertions in the affidavit if it has more than mere suspicion to disbelieve the affiant. Presumably, in view of the time and cost the court will be reluctant to convene a hearing if the affidavit demonstrates a prima facie case of indigency and there is no specific reason to doubt the affiant's veracity. The record does not disclose what prompted respondent court suddenly, after an appellate writ was sought, to schedule a hearing after twice denying petitioner's application without a hearing.

■ If the petitioner's affidavit is not sufficient the court must give its reasons for denying leave to proceed in forma pauperis. (See *O'Neal* v. *United States* (5th Cir. 1969) 411 F.2d 131, 138; *Foster* v. *United States* (6th Cir. 1965) 344 F.2d 698.) A statement of reasons for denial is essential not only to enable a prospective litigant to renew his application before the trial court if the defect can be corrected, but also to provide an appellate court with a basis for reviewing the trial court's denial.

■ We come, then, to the merits of petitioner's claim that she is entitled to proceed in forma pauperis. Her affidavit, executed under penalty of perjury, declares as follows: Petitioner desires to begin divorce proceedings against her husband but does not have the filing fee to pay to the court. She has four minor children, and fears that if she does not obtain a court order awarding her custody, her husband, who is now believed to be living with relatives in Texas, might attempt to remove them from the state.[5] Her husband has no money or property, and he earned a total of $28 in 1971.

Petitioner possesses no bank account and no property except for used household furniture. She has no car or telephone. Her total income is $263 a month in welfare aid. Monthly household expenses are as follows: $70 for food, $65 for rent, $15 for water, $20 for gas and electricity, $10 for clothing, $15 for transportation, $15 for laundry and cleaning, and $40 for household and personal care items. The $13 residue goes for incidentals, "although we never seem to have any money left over because we are behind about $50 in utility bills."

At the hearing the welfare investigator testified for the county that although he made no personal investigation of petitioner's needs, a review of her affidavit indicated that she had a cash surplus of $52 a month. This conclusion was based upon his assertion that petitioner could purchase for $74 food stamps worth $126. She could, he testified, barter these food stamps for the household and necessary personal care items such as soap, to which she had attributed $40 in her budget. He stated further that her expenses were not out of line with those of the average welfare recipient.

At the conclusion of the foregoing testimony petitioner's volunteer attorney declared that he would not introduce any evidence in addition to the affidavit but that he desired to argue the case. The court replied, "I don't

[5]Petitioner's fears were well founded. Counsel have advised us that subsequent to the filing of this petition, the husband did indeed return, allegedly assaulted petitioner and her children and threatened to remove the children to Texas. In order to obtain an immediate temporary restraining order from the trial court against the husband, petitioner's attorney determined that his only humane course was to advance the filing fee in her dissolution action. He anticipates reimbursement when this writ is issued.

need any argument. The Court will make a finding that the filing fees for divorce . . . is $27 and the cost of service will depend upon whether or not service can be made personally or must be published, and taking the outside figure, $30 for publication, that leaves $57. The Court will make a finding that she is not so indigent, within the meaning of the law covering In Forma Pauperis, that she can't pay these fees and costs to initiate her action. The Court will make a finding that she is capable of doing it, if not in one payment, she is capable of setting aside at least $10 a month for a period of four or five months to obtain her fees and costs. The status of the petition will not be changed. It will not be accepted for filing In Forma Pauperis."

It seems evident from petitioner's affidavit, and it is conceded by respondents, that she made a prima facie showing of indigency in support of her motion. The only evidence introduced by respondent county in opposition to this showing was the welfare investigator's testimony that petitioner can use her food stamps to obtain household and personal care items to which petitioner had attributed $40 in her declaration. The asserted surplus of $10 a month which the court found petitioner could save to defray her court costs must come from this source. ■ Yet federal regulations not only prohibit the use of food stamps for any product not for human consumption (except alcohol and tobacco and imported foods may not be purchased with food stamps) (7 C.F.R. §§ 270.2(s), 272.2(b)), but they provide that any unauthorized use of food stamps constitutes a felony or misdemeanor, depending upon the amount involved (7 C.F.R. § 270.4(b)). The regulations also state categorically that food stamps shall not be considered to be income or resources for any purpose under any state law (§ 271.1(b)).[6]

■ The district attorney, representing respondents, admits that the court was aware of these regulations. His only response to the obvious impropriety of considering food stamps as an asset redeemable for prohibited items is the astonishing suggestion that petitioner, by deliberately committing the crime of misusing food stamps could accomplish the payment of her filing fee.[7] We are dismayed that a public official would advance a proposition so palpably devoid of merit.

---

[6]7 Code of Federal Regulations section 271.1(b) provides: "*Free coupons as income or resources.* Free coupons provided to any eligible household shall not be considered to be income or resources for any purpose under the Social Security Act of 1935, as amended, or under any other Federal or State laws including, but not limited to, laws relating to taxation, welfare, and public assistance programs."

[7]The deputy district attorney asserts in a letter which is a part of the record, "*Laws and regulations notwithstanding,* it is within the personal knowledge and experience of the undersigned that numerous stores in San Luis Obispo County will honor food stamps for all purposes (including alcohol and tobacco). This is a

Respondent court's ruling that petitioner did not qualify as an indigent because she could obtain the filing fee by setting aside $10 a month for four or five months is untenable for a reason independent of the absence of a showing that petitioner had sufficient income to enable her to save this sum each month. ■ In *Ferguson* v. *Keays, supra,* 4 Cal.3d 649, we held that an applicant need not establish total destitution in order to qualify for in forma pauperis relief, although he may be required to establish more than that payment of the filing fee would be burdensome or inconvenient. (4 Cal. 3d at p. 658, fn. 8.) In reaching this conclusion, we relied upon *Adkins* v. *DuPont Co., supra,* 335 U.S. 331, 339-340 [93 L.Ed. 43, 48-49], which held that a litigant was not required to allege that he would contribute the last dollar he has or can acquire in order to be considered indigent.

We know of no authority permitting a court to deny an application to proceed in forma pauperis upon the ground that, although the applicant is currently indigent, he may, over a period of months, succeed in accumulating the amount necessary to defray his costs. The adoption of such a concept could virtually eliminate relief in forma pauperis since it would be a rare case in which a litigant could not deny himself necessities of life to save some sum over a period of months or years, and then file his action when he had saved the total amount necessary. We reject the approach adopted by respondents not only because it would be inconsistent with the authorities cited above but also because it would in many cases impose intolerable delays upon indigents in the enforcement of their rights.

■ Even if we were to assume arguendo that petitioner can save $10 a month based on her present budget, it is not unlikely that she may be faced in subsequent months with some essential expenditures which will consume the amount she could otherwise set aside, thereby indefinitely postponing the time she can file her action. Such a prospect is reasonably anticipated if one considers that she is supporting herself and her four children on $263 a month. During the period she attempted to save money for her filing fee she would be deprived of various rights to which she would be entitled if her marriage had been dissolved, and if the allegations of her affidavit are to be believed, she may also be jeopardizing her right to retain custody of her children.

■ Indigents are entitled not merely to access to the courts but to timely access. They may not be subjected to unreasonable delays in securing fundamental rights solely by reason of their poverty.

matter which this Court could even take judicial notice of. In any event, respondents are prepared to prove in open Court that food stamps may be so used for all purposes." (Italics added.)

■ In opposing petitioner's claim, respondents rely heavily upon the fact that she did not attend the hearing to consider whether she was able to pay the filing fee. She was notified of the time and place of the hearing, but no subpoena for her appearance was issued. Respondents claim that her failure to appear prevented the court from examining into the truth of the factual matters alleged in her declaration.

Whatever may be the merit of this argument in a hypothetical case in which a trial court denied leave to proceed in forma pauperis on the basis of doubt as to the factual statements made in the supporting affidavit and the applicant had refused, after being subpoenaed, to support the declaration by personal testimony, this is not such a case. Here no hearing was set until after two arbitrary denials in the trial court and a petition for a writ had been filed in the Court of Appeal. Even then the underlying assumption at the hearing by the attorneys for both sides, the sole witness, and the county, was that petitioner's income and expenses as set forth in her declaration were truthfully stated. Based upon this assumption, respondent court held that petitioner could afford to set aside $10 a month for several months to defray her court costs. Indeed, the only reference to the matter at hand at the hearing was the welfare investigator's testimony that although he had not discussed petitioner's declaration with her or personally investigated any of the items of expenditure set forth therein, it was his expert opinion that her expenses as set forth in the declaration were not at variance with those of the average welfare recipient. Under these circumstances petitioner's absence from the hearing should not have been a determinative factor in the court's appraisal of her motion to proceed in forma pauperis.

Let the writ of mandate issue as prayed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.