[Civ. No. 40991. Second Dist., Div. Four. Dec. 19, 1973.]

BRYAN HUNT et al., Plaintiffs and Respondents, v.
WILLIAM B. HACKETT III et al., Defendants and Appellants.

## COUNSEL

Earl Johnson, Jr., for Defendants and Appellants.

Terry J. Hatter, Jr., Ronald Bauer and Philip L. Goar as Amici Curiae on behalf of Defendants and Appellants.

Schramm, Raddue & Seed and Kurt H. Pyle for Plaintiffs and Respondents.

## OPINION

**JEFFERSON, J.**—Plaintiffs Bryan and Doreen F. Hunt brought this action for reformation and enforcement of a promissory note secured by a deed of trust, for breach of contract, for fraud, for negligence and they also alleged a conspiracy to defraud them with respect to the sale of certain real property in Montecito. Named as defendants were William Hackett III, a licensed real estate broker, his wife, Roxanne S. Hackett, Milo Saling, also a licensed real estate broker, M. S. Diversified Companies, Inc., doing business as Saling Realty, and M. Patti Haynes, an employee of Saling; in addition, Paul Zamora, Robert H. Wood, Mrs. Robert H. Wood and Oakdale Manor, Inc., were sued as defendants.

Mr. Hackett appeared without counsel at all times prior to the filing of his notice of appeal. The record does not show that Mrs. Hackett appeared at all in the trial court until a notice of appeal was filed on her behalf. Defendants Saling, Haynes, and M. S. Diversified Companies, Inc., were

represented by one firm of attorneys, and the defendants Zamora, Wood and Oakdale Manor, Inc., were represented by another attorney.

The case was tried before the court sitting without a jury. During the course of the trial, on September 2, 1971, plaintiff dismissed as to the defendants Saling, Haynes and M. S. Diversified Companies, Inc. The court was informed that $24,000 had been paid on behalf of these defendants to plaintiffs for the dismissal.

The trial court gave plaintiffs judgment on all eight causes of action set forth in their complaint against the remaining defendants, awarding compensatory damages of $42,300 with interest from November 26, 1967; exemplary damages of $25,000; attorney fees of $20,000; and costs of suit, $1,269.29.

Only William B. Hackett III and Roxanne S. Hackett have pursued the appeal to this court. The sole issue argued by the attorney representing them here, and in the brief of amicus curiae, is that the trial court erred in failing to appoint counsel for the Hacketts. It is not contended by appellants that either of the Hacketts had a meritorious defense to the action, or that the amount of the judgment is excessive, or that there was a miscarriage of justice in any other respect.

The argument made in the briefs for the Hacketts is that the superior court should have furnished counsel to represent them in that court because they were indigent. The record on appeal is remarkably brief on the subject of the Hacketts' financial status. It does not appear that either one filed in the superior court any written request for the appointment of counsel, or any statement as to his or her financial condition. The request for counsel appears in the reporter's transcript for the second day of the trial, just after Mr. Hackett had been called as plaintiffs' witness and sworn.

Mr. Hackett opened the subject by saying, "Your Honor, may I ask your advice in this testimony that is about to be asked?"

After the court had responded that it could not advise him, Mr. Hackett then stated in substance as follows: That it was "impossible financially" for him to employ counsel, that he did not feel he could have a fair hearing without one, that he had been advised by attorneys that he had "what is called a defensible case," and that the case involved his livelihood, his real estate broker's license, and "possibly criminal matters," and that he was asking the court to appoint counsel for him.

The court responded that appointing counsel was not "a function of the court in a civil matter." The trial then went forward.

The briefs do not point to anything in the record which relates to the financial condition of Mrs. Hackett.

Attached to the opening brief filed by counsel is a document headed "Affidavit" dated February 14, 1973, and signed by William B. Hackett III and Roxanne S. Hackett, which gives some information about the financial condition of the signers and their efforts to obtain trial counsel. This document contains neither a jurat nor a certificate under penalty of perjury. Its date indicates it was prepared after the record on appeal was filed in this court. Since the document was never presented to the superior court, it cannot be relied upon now in support of an argument that the superior court erred.

Defendants Hackett argue that there is a common law right in California to the appointment of counsel for an indigent in a civil case. The California Supreme Court held in an early decision that California courts have the inherent power, derived from the common law, to allow indigents to proceed in the courts *in forma pauperis.* (*Martin* v. *Superior Court,* 176 Cal. 289 [168 P. 135].) This right was expanded to include the right to appeal, without payment of the statutory filing fee, by indigents who could make a proper showing of inadequate financial resources and a meritorious appeal. (*Ferguson* v. *Keays,* 4 Cal.3d 649, 654 [94 Cal.Rptr. 398, 484 P.2d 70].) The court carefully limited the decision made to the factual situations presented therein. It stated: "In the instant cases, we are not faced with the question whether indigents must be given funds by the county or some other source in order to pay transcript fees, publication costs, and other similar third-party charges." ■ It appears that the right of access to the courts, which is afforded to indigents by the common law, has not been extended to include any right to court-appointed counsel.

Defendants further contend that the right to such counsel in civil matters is constitutionally mandated. The traditional distinction between civil and criminal matters still applies. ■ The California Constitution (art. I, § 13) and the federal Constitution (6th Amend.) specifically provide for court-appointed counsel in criminal matters only. The constitutional safeguards applicable to criminal cases need not be met in all civil cases, but only in cases denominated as civil which are basically criminal in nature. (*In re Gault,* 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]; *Kent* v. *United States,* 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045]; *In re Robinson,* 8 Cal.App.3d 783, 786 [87 Cal.Rptr. 678]; see also 1 Witkin, Cal. Procedure (2d ed. 1970) Attorneys, § 28, p. 37.)

In California, a series of cases involving the dependency status of minors has discussed and rejected the contention that there is a right to court-

appointed counsel in such matters on the ground that dependency hearings are basically civil rather than criminal in nature and, thus, there is no constitutional right to counsel. (*In re Robinson,* cited *supra; In re George S.,* 18 Cal.App.3d 788, 791 [96 Cal.Rptr. 203]; *In re Joseph T.,* 25 Cal. App.3d 120, 125 [101 Cal.Rptr. 606].)

■ In the case at bench, the action was basically civil in nature. There is no California statute or case law authorizing a trial court to furnish counsel at public expense in such a case, or requiring a trial court to appoint counsel without compensation in such a case. Whether the appointment of counsel was a part of the common law of England, as appellant now contends, need not be determined here, because the current and past practice of California courts is compelling authority for the ruling of the trial court in this case.

Furthermore, the current law of California is not as harsh as counsel for the appellants has assumed. It is the duty of a California attorney "Never to reject, for any consideration personal to himself, the cause of the defenseless or the oppressed." (Bus. & Prof. Code, § 6068.) An attorney's reluctance to accept the defense of a civil case may reflect as much his lack of confidence in the defense as the lack of a fee. There are legal aid societies available to assist persons in genuine need. One of the duties of the public defender is that "Upon request he shall defend any person who is not financially able to employ counsel in any civil litigation in which, in the judgment of the public defender, the person is being persecuted or unjustly harassed." (Gov. Code, § 27706, subd. (c).)

It does not appear from the record here that either appellant made any timely request to the court or anyone else, for assistance, or that either of the appellants was entitled to the assistance due an indigent who is being sued on an unjust claim.

There is one error in the record which should not be overlooked. The amount of the compensatory damages awarded by the judgment is the exact amount which the complaint alleged to be due, with interest. The record shows that $24,000 was paid before judgment for the dismissal of parties who were claimed to be jointly liable with the appealing defendants. The trial court's "Memorandum of Decision" states that plaintiffs are entitled to recover the amount demanded in their complaint, and "There shall be deducted from the total judgment the sum of $24,000 which was paid to the plaintiffs by the defendants . . . pursuant to C.C.P. Section 877(a)."

Notwithstanding all this, the judgment as entered by the superior court fails to deduct the $24,000.

We have requested counsel for both parties to advise the court whether a modification of the judgment is required. Plaintiffs agree that it is.

The judgment is modified by adding to it the following words: "There shall be credited against this judgment $24,000 paid to plaintiffs as of September 2, 1971."

As so modified, the judgment is affirmed. Neither side shall recover costs on appeal.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied January 4, 1974, and appellants' petition for a hearing by the Supreme Court was denied February 14, 1974.