[L.A. No. 30788. May 2, 1978.]

AURELIO FREGOSO JARA, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE SAN ANTONIO JUDICIAL
DISTRICT OF LOS ANGELES COUNTY,
Defendant and Respondent;
COUNTY OF LOS ANGELES et al.,
Real Parties in Interest and Respondents.

182

---

**COUNSEL**

Dawn Scott, Wilmont A. Odom, Daniel M. Luevano, John E. McDermott, Robert T. Olmos and Richard A. Rothschild for Plaintiff and Appellant.

John H. Larson, County Counsel, David B. Kelsey and Jeffrey M. Hausman, Deputy County Counsel, for Defendant and Respondent and for Real Parties in Interest and Respondents.

## OPINION

**CLARK, J.**—Appeal from judgment denying petition for writ of mandate or prohibition to compel respondent municipal court to appoint an interpreter in a civil action. We affirm the judgment.

A property damage action arising from an automobile accident was filed against appellant in the municipal court. Represented by a staff attorney of the Southeast Legal Aid Center founded under the Office of Economic Opportunity, he filed an answer and cross-complaint. Alleging indigency and inability to speak or understand English, appellant moved the court to appoint an interpreter skilled in English and Spanish, without expense to himself. The court denied the motion.

Appellant then commenced the instant writ proceeding in the superior court. That court concluded appellant does not have a common law right to an interpreter, and that refusal to appoint an interpreter for an indigent litigant in a civil case does not constitute abuse of discretion or denial of either due process or equal protection of the law.

### STATUTORY BASIS FOR APPOINTMENT

No statutory basis exists for appointment of an interpreter at public expense to assist non-English speaking litigants. Evidence Code section 752 provides for court appointment of an interpreter for a *witness*. An interpreter for a witness performs a different and much less burdensome function than an interpreter for a party. The witness' interpreter is essential to permit the witness to understand questions asked and to inform counsel, judge and jury of the witness' responses. By contrast, an interpreter for the litigant would interpret communications between the litigant and his counsel and all oral proceedings at trial including testimony by English-speaking witnesses, and communications of attorneys, judge, and jurors.

## INHERENT POWER OF THE COURT

■ A trial court has inherent power to waive its filing fees to accommodate indigents in civil litigation. (*Martin* v. *Superior Court* (1917) 176 Cal. 289, 290 et seq. [168 P. 135]; *Earls* v. *Superior Court* (1971) 6 Cal.3d 109, 113 [98 Cal.Rptr. 302, 490 P.2d 814].) Appellate courts also have inherent power to waive filing fees for indigent civil litigants. (*Ferguson* v. *Keays* (1971) 4 Cal.3d 649, 653 et seq. [94 Cal.Rptr. 398, 484 P.2d 70].) However, appellant does not seek waiver of ordinary court costs or fees. Rather, he seeks retention of an interpreter to be paid for by the county or some other public agency.

In *Ferguson,* we did not reach the question whether indigents must be given funds to pay third party charges in civil cases. (4 Cal.3d at p. 654.) Subsequent cases have refused to require counties to provide indigent civil litigants with counsel or with appellate transcripts. (*Leslie* v. *Roe* (1974) 41 Cal.App.3d 104, 107 [116 Cal.Rptr. 386]; *Hunt* v. *Hackett* (1973) 36 Cal.App.3d 134, 137-138 [111 Cal.Rptr. 456].)

Providing for appointed counsel for indigent prisoner defendants in *Payne* v. *Superior Court* (1976) 17 Cal.3d 908 [132 Cal.Rptr. 405, 553 P.2d 565], this court expressly pointed out that we do not possess the power to require expenditure of public funds for the purpose. Rather, attorneys are expected to serve gratuitously as part of their public responsibilities. (17 Cal.3d at p. 920, fn. 6.)

■ Determining whether indigent civil litigants should be provided interpreters at public expense, we first weigh the problem by considering the alternatives open to the litigants. In contemporary urban society, the non-English speaking individual has access to a variety of sources for language assistance. Members of his family, friends or neighbors—born or schooled here—may provide aid. Private organizations also exist to aid immigrants. (Cf. *Guerrero* v. *Carleson* (1973) 9 Cal.3d 808, 813 [109 Cal.Rptr. 201, 512 P.2d 833].) When counsel does not speak the litigant's language, he too may secure aid from such persons and organizations to communicate with his client. Courtroom proceedings, of course, are controlled by counsel, and the absence of an interpreter for his client to explain court proceedings as they occur has not been shown to constitute a substantial burden.

Appellant questions the competence of family members and friends to interpret complex legal proceedings. However, court certified interpreters

are certainly not lawyers and even if appointed, the complexities will remain. In any event it is counsel—not his client—who controls the litigation and must understand the proceedings at trial.

Appellant relies upon *Gardiana* v. *Small Claims Court* (1976) 59 Cal.App.3d 412 [130 Cal.Rptr. 675] holding that in small claims court volunteer interpreters should be appointed when one of the parties does not speak English, and if volunteers are unavailable, an interpreter should be appointed and compensated at public expense. In support of the latter conclusion the court reasoned that Evidence Code section 752 requires appointment of an interpreter when a witness does not speak or understand English, that courts have an inherent power to appoint interpreters when necessary to the administration of justice, and that refusal to appoint an interpreter—as a practical matter—would restrict an indigent's access to the courts.

The court's reasoning must be viewed in light of the nature of a small claims court, and when this is done the case is clearly distinguishable. That court functions informally and expeditiously. There exist no attorneys, no pleadings, and no specific rules of evidence. The awards, while made in accordance with substantive law, result from common sense. The spirit of compromise and conciliation attends the proceedings, requiring participant comprehension. (*Id.,* at pp. 417-418; *Sanderson* v. *Niemann* (1941) 17 Cal.2d 563, 573-574 [110 P.2d 1025].) The parties are usually their own witnesses and frequently the only ones. It is apparent that unless the non-English speaking party has an interpreter he is effectively barred from access to the small claims proceeding. By way of contrast, appellant possesses an attorney capable of fully representing him in the municipal court proceeding.

Because language assistance to indigent but represented litigants appears available, we are satisfied there is no need for courts to require appointment of interpreters at public expense to assist litigants.

### Constitutional Basis For Appointment

Appellant contends that refusal to appoint an interpreter denies him an opportunity to be heard, depriving him of access to the courts in violation of the constitutional guarantees of both due process and equal protection of the law. There has been no showing as to whether non-English speaking litigants, able to afford paid interpreters, are likely to secure them for consulting with counsel and translating legal proceedings.

■ Absent "countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 377 [28 L.Ed.2d 113, 118, 91 S.Ct. 780]; *Payne* v. *Superior Court, supra,* 17 Cal.3d 908, 914.) In *Boddie,* it was held that indigents could not be forced to pay a filing fee in order to dissolve their marriage. Subsequent cases limit *Boddie,* holding indigents may be required to pay the filing fee for such relief as discharge in bankruptcy or review of an agency determination resulting in lower welfare payments. (*United States* v. *Kras* (1973) 409 U.S. 434 [34 L.Ed.2d 626, 93 S.Ct. 631]; *Ortwein* v. *Schwab* (1973) 410 U.S. 656 [35 L.Ed.2d 572, 93 S.Ct. 1172].)

One of the bases for distinguishing *Boddie,* recognized in *Payne* v. *Superior Court, supra,* 17 Cal.3d 908, 916-917, is that the indigent had alternative means to secure the relief sought—means other than resort to the trial court itself for aid. (*United States* v. *Kras, supra,* 409 U.S. at p. 445 [34 L.Ed.2d at pp. 635-636]; *Ortwein* v. *Schwab, supra,* 410 U.S. at pp. 659-660 [35 L.Ed.2d at pp. 575-576].)

■ As pointed out above, the non-English speaking litigant ordinarily has alternative sources for language assistance to communicate with counsel and other community professionals and officials. The court proceedings being controlled by counsel, we further suggest that appellant is in no worse position than the numerous represented litigants who elect not to be present in court at all.

The Constitution mandates expense-paid court access in limited cases. Petitioner has not shown his access to be constitutionally impaired.

The judgment is affirmed.

Mosk, J., Richardson, J., and Manuel, J., concurred.

**TOBRINER, J.**—I dissent.

Appellant Aurelio Jara has been sued in municipal court for damages arising out of an automobile accident. He attests that he is indigent and that he can neither speak nor understand the English language. In California, all courtroom proceedings are conducted in English. (Code Civ. Proc., § 185.) Consequently, Jara requested that the court appoint an interpreter at county expense in order to translate the proceedings for

him at trial. The court, concluding that it lacked both inherent and statutory power to appoint an interpreter for this purpose, denied his motion.

As I shall explain, I believe that the municipal court erred in concluding that it lacked the authority, under any circumstances, to appoint an interpreter to assist a defendant in a civil case. In my view, a trial court clearly has the inherent authority to provide an interpreter for an indigent defendant in a civil action if the defendant lacks alternative means by which to obtain a translation of the proceedings against him. Indeed, I believe that in such circumstances fundamental considerations of due process require it to do so.

Therefore, I would remand the matter to the municipal court for it to determine whether appellant requires the appointment of an interpreter so that he may meaningfully participate in the proceedings, or whether he has alternative means by which to obtain a reasonable translation of the proceedings. I believe the majority err in precluding, in all circumstances, the trial court from exercising such inherent authority and discretion.

At issue here is the question whether our judicial system will allow an indigent defendant in a civil case who does not speak nor understand the English language to be deprived of his interest in his property (including future earnings), which he may desperately need in order to survive, in a proceeding that he does not, and, because of his indigency, cannot hope to understand. I believe this issue raises basic constitutional and human questions that the majority does not begin to confront.

The majority claims that an interpreter for a party would perform a "burdensome function," in excess of that authorized under Evidence Code section 752, by being required to interpret communications between the litigant and his counsel, all oral proceedings at trial including testimony by English-speaking witnesses, and communications of attorneys, judge, and jurors. This description, however, only illuminates the crucial purpose served by an interpreter for a non-English-speaking party. Yet the majority would preclude the indigent defendant from any access to or participation in this communication, and thus insure that for him the proceeding will be an empty and meaningless ritual.

The majority argues that the absence of a court-appointed interpreter in such circumstances works no deprivation of due process, because alternative sources of assistance are ostensibly available to the litigant

and his attorney: "Members of his family, friends or neighbors—born or schooled here—may provide aid. Private organizations also exist to aid immigrants. . . . When counsel does not speak the litigant's language, he too may secure aid. . . ." (P. 184, *ante.*) While these alternatives in any given circumstance may be able to provide assistance to a defendant, they may, just as likely, not be available. Family members, friends and neighbors may not be bilingual, or the necessity of their continuous presence in court may be unduly burdensome. Further, contrary to the majority's rather cavalier assumption, significant numbers of minority groups whose principal language is not English were neither born nor schooled here, and the defendant may not be able, therefore, to obtain assistance from his community.

In addition, in California, as in our nation as a whole, those people whose principal or sole language is not English are, unfortunately, most often part of educationally and economically deprived subgroups, and may be the persons least likely to be able to provide for the defendant a competent and coherent translation of sophisticated court proceedings. Therefore, whether in a given case the defendant has access to effective, alternative resources or whether he requires the assistance of a court-appointed interpreter at the expense of the county must lie within the sound determination and discretion of the court.

The majority argues that the absence of an interpreter for the non-English-speaking defendant has not been shown to constitute a "substantial burden." I cannot agree with the majority's assessment of the confusion, the despair, and the cynicism suffered by those who in intellectual isolation must stand by as their possessions and dignity are stripped from them by a Kafka-esque ritual deemed by the majority to constitute, nonetheless, a fair trial.

We said in *Sokol* v. *Public Utilities Commission* (1966) 65 Cal.2d 247, 254 [53 Cal.Rptr. 673, 418 P.2d 265], "What is due process depends on the circumstances. It varies with the subject matter and the necessities of the situation. [Citation.] Its content is a function of many variables, including the nature of the right affected, the degree of danger caused by the proscribed condition or activity, and the availability of prompt remedial measures." Thus, in analyzing the requirements of due process in the instant case, we must draw our guidance from those "fundamental principles of liberty and justice that lie at the base of all our civil and political institutions." (*Palko* v. *Connecticut* (1937) 302 U.S. 319, 328 [82 L.Ed. 288, 293, 58 S.Ct. 149].)

First, central in our understanding lies the principle that in a healthy and coherent society a person may be condemned, or liability imposed, only after a fair hearing, one that is neither a pretense nor a sham (*id.,* at p. 327 [82 L.Ed. at p. 293]) and one that is appropriate to the nature of the case. (*Mullane* v. *Central Hanover Bank & Tr. Co.* (1950) 339 U.S. 306, 313 [94 L.Ed. 865, 872-873, 70 S.Ct. 652].) "[A]bsent a countervailing state interest of overriding significance, persons forced to settle their claims of right· and duty through the judicial process must be given a *meaningful* opportunity to be heard." (Italics added.) (*Boddie* v. *Connecticut* (1971) 401 U.S. 371, 377 [28 L.Ed.2d 113, 118, 91 S.Ct. 780].)

This court observed little more than a year ago that "[f]ew liberties in America have been more zealously guarded than the right to protect one's property in a court of law. This nation has long realized that none of our freedoms would be secure if any person could be deprived of his possessions without an opportunity to defend them ' "at a meaningful time and in a meaningful manner." ' [citation]. In a variety of contexts, the right of access to the courts has been reaffirmed and strengthened throughout our 200-year history." (*Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 911 [132 Cal.Rptr. 405, 553 P.2d 565].) "Without such a 'legal system,' social organization and cohesion are virtually impossible; with the ability to seek regularized resolution of conflicts individuals are capable of independent action that enables them to strive for achievements without the anxieties that would beset them in a disorganized society." (*Boddie* v. *Connecticut, supra,* 401 U.S. 371, 374 [28 L.Ed.2d 113, 117].)

Furthermore, for much of our nation's history many cultural and ethnic minorities have found themselves excluded from the benefits and privileges of full membership in our society. For many of these people who speak a language other than English the key to their experience of separation has been a virtually insurmountable inability to communicate with either individuals outside of their own culture or the institutions of our system of government. (See *Guerrero* v. *Carleson* (1973) 9 Cal.3d 808, 817-818 [109 Cal.Rptr. 201, 512 P.2d 833] (Tobriner, J., dis.).) In particular, as the English language is the principle medium of communication in any court proceeding, a person's ability to use and understand the language is critical to the fundamental fairness of the proceedings. (See Chang & Araujo, *Interpreters for the Defense: Due Process for the Non-English-Speaking Defendant* (1975) 63 Cal.L.Rev. 801.) In *Castro* v. *State of California* (1970) 2 Cal.3d 223, 242 [85 Cal.Rptr. 20, 466 P.2d 244] this court removed one fundamental barrier to full participation in our

society by striking down as unconstitutional under the Fourteenth Amendment our state Constitution's requirement of literacy in the English language as a condition upon the right to vote of Spanish-speaking citizens. Nonetheless, the majority would today bar these same people from their fundamental right to a fair and meaningful hearing in our courts of law.

These considerations assume an even greater importance when they involve as they do here, the indigent *defendant* in a civil action. We recognized in *Payne* that the defense of one's property interests in a civil action constitutes a fundamental right which "equals in constitutional significance the right to dissolve a marriage that was protected in *Boddie*." (*Payne* v. *Superior Court, supra,* 17 Cal.3d 908, 916.) Furthermore, a defendant is drawn involuntarily into the judicial system. He becomes thereby subject to its immense powers, and the judicial proceeding becomes his only means of protecting his interests. Consequently, the denial of the defendant's full access to the court process "raises grave problems for its legitimacy." (*Boddie* v. *Connecticut, supra,* 401 U.S. 371, 376 [28 L.Ed.2d 113, 118].)

The question of the right of a defendant to an interpreter has arisen most often in the context of criminal proceedings. In that context, courts have generally recognized that if the criminal defendant is so unfamiliar with the English language that he cannot either communicate his testimony, or understand those of others involved in the proceedings, he is entitled as a matter of constitutional right to be furnished with the assistance of an interpreter. Although the courts have posited this right in part on the basis of the defendant's rights of confrontation and to the effective assistance of counsel in a criminal action, they have made clear that its basic source and nature run deeper.

In *In re Muraviov* (1961) 192 Cal.App.2d 604 [13 Cal.Rptr. 466], for example, the court reversed the defendant's conviction on due process grounds, holding: "There can be no doubt that due process of law and a defendant's constitutional rights are violated where [his] ignorance or inability to intelligently understand his legal and constitutional rights render it impossible for him to understand the nature of the proceedings being taken against him . . . ." (*Id.,* at p. 606.) In *People* v. *Annett* (1967) 251 Cal.App.2d 858 [59 Cal.Rptr. 888], the court also based the non-English-speaking accused's right to the assistance of an interpreter on due process grounds. "[The f]ailure of a trial court to appoint an interpreter for a defendant who has requested one, or whose conduct has

made it obvious to the court that he is unable because of linguistic difficulties knowingly to participate ... is 'fundamentally unfair' ...." (*Id.,* at pp. 861-862.)

In the leading case of *United States* ex rel. *Negron* v. *State of New York* (2d Cir. 1970) 434 F.2d 386 the defendant, a 23-year-old Puerto Rican, faced a charge of murder. He could neither speak nor understand English. Neither his attorney nor the judge could speak Spanish. Twelve of the fourteen witnesses testified in English. In reversing his conviction the court held that the right denied to the defendant was more consequential than the right to confrontation. Rather, it involved "[c]onsiderations of fairness, the integrity of the fact-finding process, and the potency of our adversary system of justice ...." (*Id.,* at p. 389.) "[A]s a matter of simple humaneness, Negron deserved more than to sit in total incomprehension as the trial proceeded. Particularly inappropriate in this nation where many languages are spoken is a callousness to the crippling language handicap of a newcomer to its shores ...." (*Id.,* at p. 390; see also *United States* v. *Carrion* (1st Cir. 1973) 488 F.2d 12, cert. den. (1974) 416 U.S. 907 [40 L.Ed.2d 112, 94 S.Ct. 1613]; *United States* v. *Desist* (2d Cir. 1967) 384 F.2d 889; *United States* ex rel. *Navarro* v. *Johnson* (E.D.Pa. 1973) 365 F.Supp. 676.)

Fully in consort with the considerations involved in these criminal proceedings, in *Gardiana* v. *Small Claims Court* (1976) 59 Cal.App.3d 412 [130 Cal.Rptr. 675] the court expressly held for the first time that an indigent, non-English-speaking litigant in a civil small claims proceeding was entitled to be furnished with a court-appointed interpreter at county expense if no competent volunteer interpreters were available. Recognizing the fundamental importance of the use of language in the small claims proceeding, the court reasoned that its statutory duty to appoint an interpreter when the prescribed circumstances so required (see Evid. Code, § 752) and its inherent power to appoint an interpreter whenever justice so required, compelled its conclusion that it was required to appoint an interpreter free of charge to translate the proceedings for an indigent, civil litigant.[1] (*Id.,* at pp. 423-424.)

We have long recognized that a court, as a part of one of the three branches of government established by the Constitution "has within it the

---

[1]Although the special nature of an action in small claims court justified the court's extension of the right to a court-appointed interpreter to an indigent plaintiff (see *Sanderson* v. *Niemann* (1941) 17 Cal.2d 563, 573-574 [110 P.2d 1025]), we do not reach this question here.

inherent power of self-preservation," that is, the power to effect its efficient administration and to prevent impairment of its constitutional functions. (*Millholen* v. *Riley* (1930) 211 Cal. 29, 33-34 [293 P. 69].) The majority argues that a court is limited to its statutory authorization, pursuant to Evidence Code section 752,[2] to appoint an interpreter for a witness who cannot sufficiently understand, or express himself in the English language. While the Legislature has provided by statute only for the appointment of an interpreter for a witness, we have not heretofore concluded that the Legislature therefore intended to limit the inherent power of the court to provide an interpreter in other circumstances when the administration of justice so demanded.

The very limited nature of the statutory provisions indicates that they were not designed to provide an exclusive basis for the exercise of the court's power. (See *Green* v. *Superior Court* (1974) 10 Cal.3d 616, 630-631 [111 Cal.Rptr. 704, 517 P.2d 1168].) In any case, as I have concluded that an indigent civil defendant possesses a constitutionally protected right to a court-appointed interpreter if no other means of assistance are available, a court necessarily has the inherent power to render the constitutional right effective, and the Legislature could not properly derogate this power. (*Byers* v. *Smith* (1935) 4 Cal.2d 209, 214 [47 P.2d 705].)

Moreover, courts have traditionally viewed the inherent power to appoint an interpreter as supplemental to, and more extensive than, the statutory provisions. ". . . [I]t is undoubtedly the rule not only that courts of general jurisdiction have inherent power to swear interpreters whenever such a course is necessary to the due administration of justice [citations], but that the power may be exercised to supplement existing statutes the provisions of which do not extend to all cases in which such a necessity appears [citations]." (*People* v. *Walker* (1924) 69 Cal.App. 475, 486 [231 P. 572].) "In every court there also rests the inherent power to call interpreters for witnesses under proper circumstances [citation]; and it is, of course, the duty of a court to call an interpreter whenever such circumstances arise." (*People* v. *Holtzclaw* (1926) 76 Cal.App. 168, 171 [243 P. 894].) "At common law the court has not only the right, but also the duty, to make such appointment where the necessity exists. [Citation.]

[2]Evidence Code section 752 provides: "(a) When a witness is incapable of hearing or understanding the English language or is incapable of expressing himself in the English language so as to be understood directly by counsel, court, and jury, an interpreter whom he can understand and who can understand him shall be sworn to interpret for him. (b) The interpreter may be appointed and compensated as provided in Article 2 (commencing with section 730) of Chapter 3."

... [T]he duty to appoint as occasion requires remains irrespective of statute. A poor litigant as well as a rich one is entitled to his day in court, and to a respectful hearing; and, insofar as he cannot present his case except through an interpreter, it is right to be heard in that way." (*Mennella* v. *Metropolitan St. Ry. Co.* (1904) 43 Misc. 5 [86 N.Y.S. 930, 931]; see also *Wise* v. *Short* (1921) 181 N.C. 320 [107 S.E. 134, 136].)

Although the majority raises the question of the power of a court to approve the payment of third party fees with county funds in the absence of the express authorization of the Legislature, that specific issue is not presented here. This court has often affirmed a court's inherent power to waive its own fees and costs (*Martin* v. *Superior Court* (1917) 176 Cal. 289, 299 [168 P. 135]; *Earls* v. *Superior Court* (1971) 6 Cal.3d 109, 113 [98 Cal.Rptr. 302, 490 P.2d 814]; *Ferguson* v. *Keays* (1971) 4 Cal.3d 649, 652 [94 Cal.Rptr. 398, 484 P.2d 70]; *Isrin* v. *Superior Court* (1965) 63 Cal.2d 153, 165 [45 Cal.Rptr. 320, 403 P.2d 728]), and, in the absence of a legislative enactment to the contrary, properly to apply funds appropriated to the court to any legitimate purpose of the court. (*Millholen* v. *Riley, supra,* 211 Cal. 29, 31.)

Interpreters' fees are treated by statute as "costs" which may be fixed as the court deems "reasonable" and which may be "apportioned and charged to the several parties in such proportion as the court may determine ...." (Evid. Code, §§ 752, subd. (b), 730, 731, subd. (c).) Similarly, the fees of interpreters employed by the county and assigned to participate in a civil proceeding (Gov. Code, § 26806, subd. (c)) are assessed against the litigants "in such proportions as the court may direct" and are "taxed and collected as other costs." (Gov. Code, § 68092, subd. (b).) Thus, the power of the trial court to waive the collection of an interpreter's fees where a party to an action is indigent and is proceeding in forma pauperis is also implicit in its statutory power to tax and collect the fees as costs. Any contrary conclusion would have the "practical effect of restricting an indigent's access to the courts because of his poverty, ... [and would contravene] the fundamental notions of equality and fairness which since the earliest days of the common law have found expression in the right to proceed in forma pauperis." (*Isrin* v. *Superior Court, supra,* 63 Cal.2d 153, 165.)

Only a generation ago, in *Griffin* v. *Illinois* (1956) 351 U.S. 12, 19 [100 L.Ed. 891, 899, 76 S.Ct. 585, 55 A.L.R.2d 1055], our high court unequivocally declared that "[t]here can be no equal justice when the kind of trial a man gets depends on the amount of money he has." Even

in a civil case, the "fair and meaningful hearing" guaranteed to all persons by due process of law requires more than merely the physical presence of the defendant, particularly when because of his indigency he lacks the means to understand the very language in which the proceedings are conducted.

In *Castro* v. *State of California, supra,* 2 Cal.3d 223, we refused to allow a person's language, and his inability to understand English, to preclude him from exercising his fundamental right to vote. It is indeed anomalous that, by today's decision, an heir to the same "great and gracious culture, identified with the birth of California," (*id.,* at p. 243) is effectively denied the equally fundamental right to a fair and meaningful hearing in which to defend his interests.

For these reasons I would reverse and remand the case to the municipal court with directions to determine, under the facts of the present case, whether a court-appointed interpreter should be provided to appellant.

Bird, C. J., and Newman, J., concurred.