Filed 5/12/22  Marriage of Ayoub and Huang CA4/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of GEORGE AYOUB and CAIYUN HUANG. | |
| GEORGE AYOUB,<br><br>    Respondent,<br><br>v.<br><br>CAIYUN HUANG,<br><br>    Appellant. | E075741<br><br>(Super.Ct.No. FAMSS1808746)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Teresa S. Bennett, Judge.  Affirmed.

Caiyun Huang, in pro. per., for Appellant.

No appearance for Respondent.

In this marriage dissolution case, respondent and appellant Caiyun Huang requested to be allowed to live in petitioner and respondent George Ayoub's separate property residence for two years following the divorce.  The family court denied the request.  Huang appeals, citing temporary legal protections for renters implemented in

1

response to the COVID-19 pandemic and stating that this is "similar to an unlawful detainer situation." Finding no abuse of discretion, we affirm.

BACKGROUND

Huang and Ayoub married in 2015 and separated roughly two and a half years later in 2018. After the separation, Huang continued to reside in Ayoub's home, which he owned prior to their marriage.

Following is the family court's ruling, in full, denying Huang's request to remain in Ayoub's residence: "Both parties testified that they agreed to the date of separation as being 25 February 2018 when an incident occurred at the residence in Chino Hills that resulted in [Ayoub]'s arrest. According to testimony, the parties argued over the use of a telephone that had been lent to [Ayoub] for an international call and [Huang] indicated the lender needed the telephone returned during the international call. This led to an argument wherein [Ayoub] slammed down his hands on a laptop that [Huang] had been using that broke the property. [Ayoub] was arrested and the result of that case after one year was a nolo contendere plea to disturbing the peace and a fine with a terminal disposition and no probation, credit for 1 day served prior to [Ayoub] bailing out of jail.

"These parties have resided in [Ayoub]'s residence since that date although both testified that they do not speak to each other and do not eat meals together. [Ayoub] testified that [Huang] had threatened an easy way to kill [Ayoub] through the use of some mixture of honey and onions to which [Huang] indicated that [Ayoub] was not telling the truth. [Ayoub] indicated that [Huang] has destroyed the residence by cooking her food

for [Huang] and her daughter with the oil destroying the marble floor and counter tops in [Ayoub]'s home. [Huang] stated that it was normal wear and tear and refused to pay one-half the cost of polishing the marble as it was too expensive.

"Based on the testimony of these parties, it is clear to the Court that they cannot remain in the same residence any longer. [Huang] has requested through the filing of a Request For Order to be allowed to remain in [Ayoub]'s home for an additional two years for her daughter to finish high school and only pay a portion of the utilities. [Huang] has also requested exclusive use of the residence and for [Ayoub] to live elsewhere based on the incident that occurred between them at the date of separation, 25 February 2018.

"[Ayoub] has argued that [Huang] has property in China that could be sold and used to assist [Huang] in obtaining her own residence. [Ayoub] also indicated that although there was a 'green card' that [Ayoub] assisted in providing for [Huang] to come to the United States, after the incident in February 2018, [Ayoub] sought to retract any sponsorship of [Huang]. There are at present proceedings in immigration court where [Huang]'s appeal was granted that had denied [Huang] from obtaining a work visa. That matter is being handled by immigration counsel.

"Based on the premarital agreement these parties entered into prior to the marriage and the facts as determined by the Court, there is no avenue by which [Huang] has legal grounds for having [Ayoub] removed from his separate property residence to allow [Huang] and her daughter to remain in that property for the next two years especially paying only a portion of the utilities and no rent. [Huang]'s daughter is on independent

3

studies for high school and is currently 16 years of age. [Ayoub] has indicated that [Huang] has the ability to sell property in China and purchase a mobile home in California if she wishes to remain here as well as obtain benefits from California. No domestic violence restraining order was ever filed in the Family Court from the incident from February 2018. These parties have resided in the same residence for the ensuing two and one-half years without further incident. Based on these facts, the Court denies [Huang]'s request to remain in [Ayoub]'s residence for an additional two years until [Huang]'s daughter graduates from high school. The residence is confirmed to [Ayoub] as his sole and separate property without offset to [Huang]."

The order was dated August 2020. Huang filed a notice of appeal in September 2020, stating that she was appealing from a judgment after court trial. There does not appear to have been a judgment at that time, as the register of actions indicates that judgment was given in October 2020. We construe the notice of appeal to have been effective in that it was prematurely taken from an appealable judgment. (See Cal. Rules of Court, rule 8.406(d); *In re Joshua S.* (2007) 41 Cal.4th 261, 272 ["'[I]t is, and has been, the law of this state that notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced'"].) Ayoub has not filed a respondent's brief.

4

DISCUSSION

"Where, as here, the trial court is vested with discretionary powers, we review its ruling for an abuse of discretion."  (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 625.)  When we do so, we ask "whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered."  (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598.)  "[W]hen two or more inferences can reasonably be deduced from the facts, a reviewing court lacks power to substitute its deductions for those of the trial court."  (*Ibid.*)

Huang contends that the trial court should have allowed her to stay in Ayoub's residence for two years following the divorce.[1]  Her primary argument is that she is similarly situated to a tenant who is protected from eviction because of the COVID-19 pandemic.

We reject the argument.  There is no evidence that Huang and Ayoub were ever in a tenant-landlord relationship.  To the contrary, the trial court noted elsewhere in its ruling that Huang's "Income and Expense Declaration indicated that she paid no rent," despite living in the house for an additional two years after the separation.  Additionally, we see no reason, and Huang has not provided us with any, why we should construe *tenant* protections to extend to individuals in Huang's circumstances, given that "[w]e must presume that the Legislature intended 'every word, phrase and provision . . . in a

---

[1]  Huang does not contend that the trial court's refusal to allow her *exclusive* use of the residence was in error.

5

statute . . . to have meaning and to perform a useful function'" (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476).

Huang does not contend that the trial court's ruling on her request to stay in Ayoub's house was an abuse of discretion in any other way.  We therefore find that Huang has not demonstrated any error.  Rather, the ruling was properly within the family court's discretion.

Apart from the residence order, Huang contends that the trial court erred in not providing a Chinese interpreter for her, in stating that her daughter was "independent," and in stating that Huang and Ayoub did not share expenses.

We reject these contentions as well.  First, the trial court was under no obligation to provide Huang an interpreter.  (See *Jara v. Municipal Court* (1978) 21 Cal.3d 181, 185 [holding, in case involving indigent but represented civil litigant, that "there is no need for courts to require appointment of interpreters at public expense to assist litigants"].) *People v. Superior Court (Almaraz)* (2001) 89 Cal.App.4th 1353, which Huang relies on in contending otherwise, centered on the right to an interpreter for "'[a] person unable to understand English *who is charged with a crime*,'" and is thus inapplicable.  (*Id.* at p. 1355, citing Cal. Const., art. I, § 14, italics added.)  In any event, Huang did not request an interpreter below, and after examining the record we do not believe that an oral statement she made, which she claims led the court to erroneously believe she was receiving unemployment benefits, would have affected the trial court's ruling on the

6

residence order.  The trial court made no mention of unemployment benefits when discussing and ruling on the residence order.

Second, Huang has not shown why either the trial court's characterization of Huang's daughter as "independent"[2] or its statement in a separate portion of the ruling, finding that Huang and Ayoub did not share expenses, would justify reversal.  The California Constitution "generally 'prohibits a reviewing court from setting aside a judgment due to trial court error unless it finds the error prejudicial.'" (*F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108, citing Cal. Const., art. VI, § 13.)  Huang has not attempted to show any prejudice from this purported inaccuracy, and we can discern none from the record.

"Although [Ayoub] did not file a brief in this appeal, [Huang] 'still bears the "affirmative burden to show error whether or not [Ayoub]'s brief has been filed," and we "examine the record and reverse only if prejudicial error is found."'" (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 110, fn. 1.)  We find no error here at all, let alone prejudicial error.

---

[2] It is not entirely clear what Huang refers to here, as she does not cite to the record when making this contention.  The only apparent references to Huang's daughter being dependent or independent in our record involve the family court asking whether Huang's daughter was doing "independent studies" at school, and its statement in its ruling that she was.

DISPOSITION

The order is affirmed.  Each side is to bear their own costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


RAPHAEL
J.


We concur:

CODRINGTON
Acting P. J.

MENETREZ
J.

8